ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JUAN RAÚL MARI PESQUERA<br><br>Apelante<br><br>v.<br><br>VANESSA MABEL RAFOLS SALABERRY Y OTROS<br><br>Apelada | **KLAN202300700** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Aguadilla<br><br>Civil Núm. AU2019CV00551<br><br>Sobre:<br>Daños y Perjuicios Incumplimiento Contractual |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio y el Juez Salgado Schwarz.[1]

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de marzo de 2025.

Comparece ante este foro el Lcdo. Juan Raúl Mari Pesquera (Lcdo. Mari Pesquera) y el Bufete Juan Raúl Mari Pesquera, CSP (el Bufete; en conjunto, "parte apelante"), y nos solicitan que revisemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguada, notificada el 12 de julio de 2023. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* dos solicitudes de sentencia sumaria instadas por Luna Commercial II, LLC (Luna Commercial o "parte apelada"). En consecuencia, concluyó que no existe una reclamación que justificara la concesión de un remedio en contra de la parte apelada. A su vez, determinó que la deuda reclamada estaba vencida, era líquida y exigible.

---

[1] En virtud de la Orden Administrativa OATA-2023-142, se designa al Hon. Carlos G. Salgado Schwarz, en sustitución de la Hon. Olga Birriel Cardona.

Por los fundamentos que se exponen a continuación, **REVOCAMOS** el dictamen recurrido.

**I.**

El 20 de septiembre de 2019, el Lcdo. Mari Pesquera presentó una *Demanda* sobre incumplimiento de contrato y daños y perjuicios en contra de Scotiabank de Puerto Rico (Banco o Scotiabank).[2] En esta, alegó que el Bufete solicitó una línea de crédito, la cual garantizó con una propiedad del Lcdo. Mari Pesquera. Indicó que, para el año 2011, el Bufete comenzó un procedimiento de *Quiebras* que incluía dicha línea de crédito. No obstante, sostuvo que, el Bufete desistió del proceso de *Quiebras* al llegar a un acuerdo transaccional con Scotiabank. En particular, señaló que el acuerdo se llevó a cabo con el Sr. Víctor García (señor García), quien fungía como oficial del Banco a cargo de "Cuentas Especiales". Sostuvo que, como parte del acuerdo, el Bufete se comprometió a pagar un mínimo de $750.00 mensuales los cuales cubriría los intereses de la deuda. No obstante, señaló que cualquier exceso sería abonado al principal. Finalmente, adujo que el número de cuenta del préstamo era el **159700861**.

De otra parte, el Lcdo. Mari Pesquera alegó que Scotiabank radicó una *Demanda* sobre cobro de dinero, en el caso núm. NICI201500195, sin embargo, este fue transado. Añadió que, Scotiabank se comprometió a

---

[2] *Demanda*, anejo I, págs. 1-4 del apéndice del recurso. El 28 de julio de 2020, el Lcdo. Mari Pesquera presentó una *Moción Enmienda a la Demanda* para incluir al Bufete como parte codemandante en la *Demanda*. Véase, *Moción Enmienda a la Demanda*, anejo IV, pág. 11 del apéndice del recurso. El 14 de febrero de 2022, el Lcdo. Mari Pesquera presentó una *Segunda Demanda Enmendada*, en la cual incluyó a Luna Commercial como parte demandada. Véase, *Segunda Demanda Enmendada*, anejo XLII, págs. 177-182 del apéndice del recurso.

reducir la cantidad reclamada y continuar acreditando los abonos mensuales a la deuda restante.

Así las cosas, el Lcdo. Mari Pesquera esbozó que, por más de cinco (5) años, Scotiabank aceptó los pagos mensuales que realizó al préstamo hipotecario. Indicó que, los pagos los dirigió al señor García al PO Box 362394, San Juan, PR 00936-2394, bajo el número de cuenta **159700861**. Sin embargo, alegó que el 24 de diciembre de 2016, el Bufete recibió una carta del Banco con fecha del 9 de abril de 2012 y sin la firma de algún funcionario, donde le informaban que le devolvían el cheque #2338 por la cantidad de $1,000.00, debido a que, "no se logró identificar la cuenta". Ante esto, sostuvo que le envió una misiva a Scotiabank por su incumplimiento contractual, sin embargo, no obtuvo respuesta.

Por otra parte, el Lcdo. Mari Pesquera indicó que para el año 2017, el Banco le cursó una carta cobrándole una deuda bajo el número de cuenta **8660700861**. Sin embargo, reiteró que dicha deuda no procedía, debido al acuerdo transaccional del caso núm. NICI201500195. Asimismo, indicó que Scotiabank no acreditó los pagos efectuados por el Bufete desde el año 2011.

Como consecuencia, solicitó la suma de $150,000.00, en concepto de daños y perjuicios por incumplimiento contractual a favor del Bufete; $150,000.00 en concepto de daños y perjuicios por incumplimiento contractual a favor de éste; que se eliminaran los intereses acumulados de la deuda desde que el Banco incumplió el acuerdo alcanzado con el Bufete para el año 2011, hasta el momento de la culminación del pleito; que se adjudicara a la deuda los pagos realizados desde el año

2011 hasta que el Banco incumplió el contrato; se redujera de la deuda la cantidad que se alcanzó a transar en el pleito del año 2015; más las costas, gastos, honorarios de abogado e intereses del litigio.

El 12 de febrero de 2020, Scotiabank presentó una *Solicitud de Sustitución de Parte Demandada*. Esbozó que, el Banco se fusionó con Oriental Bank (Oriental), resultando Oriental Bank como la entidad subsistente.[3]

Así las cosas, el 31 de agosto de 2020, Oriental presentó su *Contestación a Demanda Enmendada y Reconvención*.[4] En esencia, negó la mayoría de las alegaciones de la *Demanda*. A su vez, señaló que la línea de crédito otorgada por Scotiabank por la suma de $150,000.00 originalmente tenía el número de cuenta **159700861**, sin embargo, fue cambiado al número de cuenta **8660700861**.

Con respecto a la *Reconvención*, Oriental sostuvo que, la parte apelante y Scotiabank suscribieron un *Scotiabusiness Customer Agreement*. Mediante este, Scotiabank le concedió una línea de crédito al Lcdo. Mari Pesquera por la suma de $150,000.00. Sin embargo, indicó que el apelante dejó de pagar dicho préstamo, incurriendo en incumplimiento contractual. Así pues, señaló que, para el 22 de agosto de 2020, el Lcdo. Mari Pesquera adeudaba $112,024.34 por el principal, más $22,178.06 por concepto de intereses acumulados, más la suma pactada de $15,000.00 para costas, gastos y honorarios de abogado.

---

[3] *Solicitud de Sustitución de Parte Demandada*, entrada núm. 12 en el Sistema Unificado de manejo y Administración de Casos (SUMAC).
[4] *Contestación a Demanda Enmendada y Reconvención*, anejo IX, págs. 16-21 del apéndice del recurso.

El 31 de agosto de 2020, Oriental presentó una *Demanda contra Tercera* en contra de la Sra. Vanessa Mabel Rafols Salaberry (señora Rafols).[5] En esta, le imputó las mismas actuaciones y deudas acumuladas que al apelante.

El 9 de septiembre de 2020, el Lcdo. Mari Pesquera presentó su *Contestación a Reconvención*.[6] En lo pertinente, aceptó que suscribió el *Scotiabusiness Customer Agreement*, sin embargo, negó las condiciones y los términos allí detallados.

El 4 de enero de 2022, Oriental presentó su *Reconvención y Demanda contra Terceros Enmendada*.[7] Alegó que, la propiedad identificada como la finca #14615 la cual garantizaba el pago y cumplimiento del *Scotiabusiness Customer Agreement*, había sido vendida al Sr. Raúl Mari Fernández (señor Mari Fernández). Por ello, solicitó su inclusión como parte indispensable y con interés en el pleito.

Posteriormente, el 4 de febrero de 2022, Oriental Bank y Luna Commercial presentaron una *Solicitud de Sustitución de Parte Demandada*.[8] Indicaron que, la deuda objeto del pleito, había sido vendida por Oriental a Luna Commercial. Por ello, solicitaron la sustitución de partes.

Así las cosas, el 8 de junio de 2022, el foro primario notificó una *Sentencia Parcial*.[9] En síntesis, determinó que procedía la desestimación de la

---

[5] *Demanda contra Tercera*, anejo X, págs. 22-24 del apéndice del recurso.
[6] *Contestación a Reconvención*, anejo XI, págs. 25-26 del apéndice del recurso.
[7] *Reconvención y Demanda contra Terceros Enmendada*, anejo XVII, págs. 45-50 del apéndice del recurso.
[8] *Solicitud de Sustitución de Parte Demandada*, anejo XXXV, págs. 154-158 del apéndice del recurso.
[9] *Sentencia Parcial*, anejo LXII, págs. 277-286 del apéndice del recurso.

reclamación en contra de Oriental por no encontrar base para las causas de acción invocadas en su contra. A su vez, indicó que continuarían los procedimientos con el nuevo acreedor, Luna Commercial.

Luego de varios trámites procesales, el 10 de mayo de 2023, Luna Commercial presentó una *Solicitud de Sentencia Sumaria Sobre Reclamación de Luna*.[10] Mediante esta, desglosó trece (13) hechos que a su juicio no estaban en controversia. Así pues, sostuvo que logró probar todos los elementos necesarios para constituir una causa de acción por cobro de dinero y ejecución de prenda e hipoteca.

Posteriormente, el 26 de mayo de 2023, la parte apelada presentó una *Solicitud de Sentencia Sumaria contra Segunda Demanda Enmendada (Archivo Núm. 97)*.[11] Alegó que, el Lcdo. Mari Pesquera no poseía prueba admisible que demostrara que Scotiabank había suscrito un acuerdo transaccional con el Bufete, ni presentó prueba que demostrara el alegado daño por incumplimiento contractual. Por ello, solicitó la desestimación de la demanda.

En respuesta, el 31 de mayo de 2023, la parte apelante presentó su *Oposición a Moción de Sentencia Sumaria*.[12] Manifestó que, según la tabla de amortización de la deuda que proveyó Oriental, no le acreditaron los pagos que realizó. Sostuvo que, el número de la línea de crédito, mediante Scotiabank, era el **159700861** al

---

[10] *Solicitud de Sentencia Sumaria Sobre Reclamación de Luna*, anejo XCIV, págs. 531-554 del apéndice del recurso.
[11] *Solicitud de Sentencia Sumaria contra Segunda Demanda Enmendada (Archivo Núm. 97)*, anejo XCVIII, págs. 659-697 del apéndice del recurso.
[12] *Oposición a Moción de Sentencia Sumaria*, anejo C, págs. 754-805 del apéndice del recurso. El 14 de junio de 2023, la parte apelante presentó su *Oposición a Segunda Moción de Sentencia Sumaria*. Véase, *Oposición a Segunda Moción de Sentencia Sumaria*, anejo CIII, págs. 843-860 del apéndice del recurso.

cual efectuó los pagos. Sin embargo, que Scotiabank cambió el número del préstamo sin notificarle. Asimismo, reiteró que el Banco cobró los pagos recibidos, pero nunca fueron acreditados. Ante ello, solicitó que fuera denegada la moción de sentencia sumaria.

Así las cosas, el 12 de julio de 2023, el Tribunal de Primera Instancia notificó la *Sentencia* apelada.[13] Concluyó que no procedía la *Segunda Demanda Enmendada* instada por el Lcdo. Mari Pesquera, debido a que, no presentó copia del acuerdo transaccional. Determinó que, los cambios al número de cuenta, la falta de acreditación de los pagos realizados y la declaración de la deuda vencida, no eran suficientes para una causa de acción sobre incumplimiento contractual. Por tanto, declaró *Ha Lugar* la moción de sentencia sumaria de Luna Commercial, y como consecuencia, desestimó la reclamación del apelante.

En cuanto a la *Reconvención* presentada por Luna Commercial, la declaró con lugar, debido a que la deuda reclamada estaba vencida, era líquida y exigible. Puntualizó que, a diferencia de lo alegado por el Lcdo. Mari Pesquera, la parte apelada logró probar que todos los pagos realizados habían sido acreditados a la deuda. En consecuencia, ordenó al apelante y a la señora Rafols, a satisfacer a favor de Luna Commercial, la suma de $112,024.34, más la cantidad de $56,644.09 por concepto de intereses acumulados al 24 de abril de 2023, y la suma pactada de $15,000.00 para costas, gastos y honorarios de abogado. Además, mencionó que el

---

[13] *Sentencia*, anejo CVIII, págs. 954-973 del apéndice del recurso.

incumplimiento de los pagos ordenados por parte del Lcdo. Mari Pesquera, se ordenaría la venta en pública subasta de la propiedad hipotecada.

Inconforme, el 10 de agosto de 2023, el apelante presentó el recurso que nos ocupa y formuló los siguientes señalamientos de error:

> **A. PRIMER ERROR:** Erró el TPI, al resolver la presente controversia con una Sentencia Sumaria, considerando como prueba admitida el contenido de un borrador sin firma alguna de ninguna de las partes, documento que solo se sometió como prueba de que hubo una nueva negociación de la deuda.
>
> **B. SEGUNDO ERROR:** Erró el TPI, al resolver el presente litigio por Sentencia Sumaria, violando el derecho al Debido Proceso de Ley de los demandantes, impidiéndole su día en corte, para testificar sobre los detalles de la negociación del nuevo acuerdo que estuvo vigente por más de cinco años pagando y el banco recibiendo los pagos, hasta que el Banco se desarticuló en medio de una crisis administrativa.
>
> **C. TERCER ERROR:** Erró el TPI, en no declarar ha lugar la segunda demanda enmendada sobre incumplimiento de contrato, toda vez que los bancos poseen responsabilidades y deberes fiduciarios con relación hacia sus clientes y con relación a la administración del préstamo hipotecario.
>
> **D. CUARTO ERROR:** Erró El TPI, al determinar que la hipoteca del caso de autos fue constituida en primer rango, cuando la realidad registral es que siempre ha estado, y sigue estando, en segundo rango.
>
> **E. QUINTO ERROR:** Erró el TPI, al determinar que la deuda es líquida, vencida y exigible, cuando la realidad jurídica es que el banco no cobró a tiempo la deuda, resultando en una prescripción de la misma.
>
> **F. SEXTO ERROR:** Erró El TPI, al determinar que le corresponde al Demandante producir copia de la evidencia, cuando esa responsabilidad recae en el banco debido a su responsabilidad fiduciaria y su deber de mantener registros íntegros (expediente).
>
> **G. SÉPTIMO ERROR:** Erró El TPI, al determinar que los cambios al número de cuenta y la falta de abonar pagos no dan paso a una causa de acción de incumplimiento de contrato, toda vez que los bancos tienen

responsabilidades, deberes y prohibiciones al administrar préstamos hipotecarios.

Ahora bien, el 6 de septiembre de 2023, luego de evaluar los recursos **KLAN202300700** y **KLAN202300706**[14], emitimos una *Orden* para su consolidación, en vista de que ambos solicitaban la revisión de la misma *Sentencia*.

El 10 de octubre de 2023, emitimos una *Sentencia*, mediante la cual desestimamos el recurso consolidado por falta de jurisdicción, toda vez que los apelantes incumplieron con el requisito de notificación del recurso a todas las partes, según lo exigía la Regla 13(B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 13(B).

Insatisfecho, el 16 de noviembre de 2023, la parte apelante presentó un recurso de revisión ante el Tribunal Supremo de Puerto Rico.

El 29 de agosto de 2024, el Tribunal Supremo notificó una *Sentencia*, mediante la cual expidió el recurso de *certiorari* y revocó el dictamen del Tribunal de Apelaciones. Concluyó que, el Lcdo. Mari Pesquera cumplió con la notificación del recurso a todas las partes dentro del término dispuesto. Por lo tanto, expresó que, el Tribunal de Apelaciones tenía jurisdicción para atender la controversia en sus méritos. No obstante, puntualizó que el señor Mari Fernández no recurrió de la determinación, por lo que, no tenían jurisdicción para resolver nada respecto a la desestimación de su recurso.

Ante esto, el 16 de enero de 2025, emitimos una *Resolución*, en la cual, ordenamos la desconsolidación del recurso instado por el señor Mari Fernández, bajo el

---

[14] Recurso apelativo presentado por el señor Mari Fernández.

alfanumérico **KLAN202300706**, el cual constituyó un recurso terminado mediante la *Sentencia* del 10 de octubre de 2023.

Dicho lo anterior, oportunamente, la parte apelada presentó su *Oposición a Apelación*.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso de epígrafe.

**II.**

En nuestro ordenamiento, el mecanismo de sentencia sumaria procura, ante todo, aligerar la adjudicación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo. *Rodríguez García v. UCA*, 200 DPR 929 (2018). Este mecanismo, está instituido en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, y su función esencial es el permitir que, en aquellos litigios de naturaleza civil, una parte pueda mostrar, previo al juicio y luego del descubrimiento de prueba, que no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769 (2016).

La solicitud de sentencia sumaria puede ser interpuesta por cualquiera de las partes que solicite un remedio por medio de una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2. Por consiguiente, se dictará sentencia sumaria, si las alegaciones, deposiciones, contestaciones a

interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demostrasen que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que; como cuestión de derecho, procediese hacerlo. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

En cuanto a los hechos esenciales y pertinentes a los que se refieren el precitado cuerpo de Reglas, es sabido que estos son los que se conocen como hechos materiales. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. Por ello, la controversia deberá ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1; *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

En lo particular, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento a seguir por las partes al momento de solicitarle al tribunal que dicte sentencia sumariamente a su favor. A esos efectos, la mencionada regla establece que una solicitud a su amparo, deberá incluir lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación

concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y (6) el remedio que debe concederse. Regla 36.3(a)(1-6) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a)(1-6).

Por otro lado, la parte que se oponga a que se dicte sentencia sumaria deberá controvertir la prueba presentada por la parte que la solicita. Para ello, deberá presentar su contestación a la moción de sentencia sumaria dentro del término de veinte (20) días de su notificación. Dicho escrito, además de cumplir con los mismos requisitos con los que tiene que cumplir el proponente, deberá contener:

> […]
>
> (b)
>
> (1) […]
>
> (2) [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
>
> (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen

estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. Regla 36.3 (b)(1-4)), 32 LPRA Ap. V, R. 36.3(b)(1-4).

Ahora bien, cuando se presente una moción de sentencia sumaria y se sostenga en la forma que establece la Regla 36 de Procedimiento Civil, *supra*, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones; sino que dicha parte estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra, si procede. Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c). Por tanto, el oponente deberá controvertir la prueba presentada con evidencia sustancial y no podrá simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 66 (2018).

Quiere decir que, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. *Ramos Pérez v. Univisión*, supra, pág. 215. Si el oponente no controvierte los hechos propuestos de la forma en que lo requiere la Regla aplicable, tales hechos se podrán considerar como admitidos y se dictará la sentencia en su contra, si procediese. *Roldán Flores v. M. Cuebas, Inc.*, supra. De igual forma, si la parte contraria no presenta su contestación a la sentencia sumaria en el término reglamentario provisto, se entenderá que la moción de sentencia sumaria quedó

sometida para la consideración del tribunal. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, Regla 36.3.

Por último, es preciso recordar que nuestro Máximo Foro ha dispuesto que, como Tribunal de Apelaciones, nos encontramos en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 122 (2015). A tales efectos, nuestra revisión será una *de novo* y el análisis que realizaremos se regirá por las disposiciones contenidas en la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa.

En *Meléndez González et al. v M. Cuebas*, supra el Tribunal Supremo pauto lo siguiente:

> "[Al revisar la determinación de primera instancia, el tribunal de apelación está limitado de dos maneras: *primero*, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit*[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia." Citando a *Vera v. Dr. Bravo*, 161 DPR 308, 334–335 (2004).

Por ello, de entender que procede revocar una sentencia sumaria, debemos indicar cuáles hechos esenciales y pertinentes están en controversia, e igualmente decir cuáles están incontrovertidos. Por el contrario, si encontramos que los hechos materiales (esenciales y pertinentes) realmente están incontrovertidos, nuestra revisión se limitará a revisar

*de novo* si procedía en derecho su concesión. Es decir, si el Tribunal de Primera Instancia aplicó correctamente el derecho o no. *Íd*, págs. 118-119.

### III.

En el caso de autos, el Lcdo. Mari Pesquera alega, mediante sus siete (7) señalamientos de error, que el foro primario incidió al resolver el pleito por la vía sumaria, dado que existía hechos materiales en controversia. Dicho esto, determinamos que la discusión del tercer, sexto y séptimo error disponen del recurso, por lo que, se discutirán de manera conjunta y no entraremos a considerar los méritos de los demás señalamientos de error.

En esencia, el apelante sostiene que el Banco incumplió con sus responsabilidades y deberes fiduciarios con sus clientes, toda vez que no mantenía un expediente íntegro del préstamo hipotecario. A tales efectos, argumenta que el foro primario erró al determinar que los cambios al número de cuenta y la falta de acreditación de los pagos realizados no daban paso a una causa de acción por incumplimiento de contrato.

Por su parte, en lo pertinente, Luna Commercial alega que el Lcdo. Mari Pesquera incumplió con sus obligaciones de pagos según pactados en el préstamo hipotecario. Por ello, sostiene que la deuda reclamada es líquida, está vencida y es exigible.

Al momento de evaluar la procedencia o no de una solicitud de sentencia sumaria este Foro se encuentra en la misma posición que el Tribunal de Primera Instancia. *Meléndez González et al. v M. Cuebas*, supra, pág. 122. Así pues, nuestra revisión será una *de novo* y se hará a tenor con las disposiciones contenidas en la Regla 36 de

Procedimiento Civil, *supra*. Dicho esto, evaluados los escritos presentados por las partes, juzgamos que era improcedente dictar sentencia sumaria en el pleito de epígrafe, toda vez que existían hechos medulares en controversia. Nos explicamos.

Según la tabla de amortización que obra en el expediente, observamos que la parte apelante emitió pagos a la entidad bancaria hasta el 9 de noviembre de 2016. No obstante, el Lcdo. Mari Pesquera, alega que el 6 de diciembre de 2016, el Banco le envió una carta devolviéndole un cheque de $1,000.00, en vista de que no se logró identificar la cuenta del préstamo hipotecario. Además, indicó que la carta no tenía firma de ningún funcionario y tenía fecha del 9 de abril de 2012. Señaló que, el 13 de julio de 2017, el Banco le envió una misiva de cobro, en la cual, en efecto, le informan un número de cuenta distinto al que había estado realizando pagos.

Por lo tanto, concluimos que existe controversia respecto a, si la deuda que reclaman es líquida, vencida y exigible, toda vez que existe duda sobre si fue el Banco quien incumplió inicialmente con sus obligaciones. Así pues, nos resulta irrazonable que se le exija al apelante continuar realizando pagos del préstamo, cuando alegadamente, mediante carta, la entidad bancaria devolvió un cheque por no lograr identificar el número de cuenta.

Por otra parte, observamos en la tabla de amortización, inconsistencias en el abono de los pagos al préstamo hipotecario. En específico, para las fechas desde el 9 de junio de 2015 hasta el 9 de noviembre de 2016, los pagos emitidos fueron aplicados exclusivamente al principal sin pagarse ningún tipo de interés, aun

cuando estos se acumulaban. No obstante, los pagos emitidos previo al 9 de junio de 2015, fueron abonados tanto a los intereses acumulados como al principal. Por lo tanto, el Banco también demostró un patrón inconsistente en la forma que acreditaba los pagos realizados por el apelante.

Ante ello, es improcedente dictar sentencia sumaria en el pleito de epígrafe, dado que el alegado incumplimiento por parte del Banco no puede dar paso a declarar la deuda vencida en contra del Lcdo. Mari Pesquera, en beneficio de la misma entidad bancaria.

En consecuencia, concluimos que el foro primario cometió los señalamientos de error presentados por el apelante.

**IV.**

Por los fundamentos antes expuestos, **REVOCAMOS** el dictamen apelado y devolvemos el caso para la continuación de los procedimientos, de forma cónsona con los pronunciamientos esbozados en esta *Sentencia*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones